

**Office of the New York State
Attorney General**

**Letitia James
Attorney General**

July 2, 2026

**VIA ECF**
Honorable Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas St., Courtroom 218
White Plains, NY 10601

   Re: *Dominican Sisters of Hawthorne et al. v. Hochul et al.*, No. 26-cv-02809 (NSR)

Dear Judge Román:

  This office represents Defendants Governor Kathy Hochul ("Governor"), New York State Health Commissioner James V. McDonald, and New York State Department of Health ("DOH") employees Kristen M. Pergolino, Kelly Ann Anderson, and Stephanie E. Paton (collectively, "Defendants"), in the above-captioned action. Defendants respectfully write, in accordance with Your Honor's Individual Rule 3.A.ii., in anticipation of their motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and (6).[1]

<u>Background and Plaintiffs' Allegations</u>

  Since May 2024, New York's Lesbian, Gay, Bisexual and Transgender, and People Living with HIV Long-Term Care Facility Residents' Bill of Rights ("Residents' Bill of Rights"), N.Y. Pub. Health Law § 2803-c-2, has protected residents of long-term care facilities from discrimination based on actual or perceived sexual orientation, gender identity or expression, or HIV status. In this pre-enforcement action, Plaintiffs Dominican Sisters of Hawthorne ("the Congregation") and Servants of Relief for Incurable Cancer d/b/a Rosary Hill Home ("Rosary Hill") seek to have the Residents' Bill of Rights declared unconstitutional as applied to them and to permanently enjoin its enforcement against them.[2] Proceeding under 42 U.S.C. § 1983, Plaintiffs argue that the Residents' Bill of Rights violates the Fourteenth Amendment's Equal Protection Clause and the First Amendment's Free Speech, Free Exercise, and Establishment Clauses, as well as the doctrine of religious autonomy, the ministerial exception, and the right to expressive association. As set forth herein, the Complaint must be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

---

[1] Should the Court grant the United States of America's Motion to Intervene, due to be filed July 10, 2026, Defendants would request that the Court set the same briefing schedule for Defendants' motion to dismiss the Complaint in Intervention as for the motion to dismiss the Complaint proposed herein.

[2] Although Plaintiffs nominally seek this relief as to the Residents' Bill of Rights generally, they do not bring a cause of action as to every provision of the law. *See* ECF No. 1 (Complaint, hereinafter "Compl.").

Hon. Nelson S. Román                                                                              Page 2 of 3
July 2, 2026

<u>Basis for the Anticipated Motion to Dismiss</u>[3]

First, the Complaint must be dismissed as against the Governor. Plaintiffs fail to allege that she has any connection with the enforcement of the Residents' Bill of Rights beyond her general duty to execute state laws. *See* Compl. ¶ 25; *Romeu v. Cohen*, 121 F. Supp. 2d 264 (S.D.N.Y. 2000) (holding Governor's general duty to "take care that the laws are faithfully executed" insufficient to render him a proper party in challenge to state law) *aff'd*, 265 F.3d 118 (2d Cir. 2001); *Wang v. Pataki*, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001) (same).[4]

Second, Plaintiffs lack standing. Preliminarily, one plaintiff — the Congregation — is not regulated by the Residents' Bill of Rights and has not established that that law does "not merely harm [the Congregation's] abstract social interests" but has imposed "an involuntary material burden on its established core activities." *Connecticut Parents Union v. Russell-Tucker*, 8 F.4th 167, 173-74 (2d Cir. 2021) (affirming dismissal for lack of standing where organizational plaintiff not directly regulated by challenged law failed to make this showing).[5] Furthermore, Plaintiffs lack pre-enforcement standing and their claims are unripe because any fear of enforcement is "wholly speculative." *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023) (setting forth test to establish injury-in-fact in pre-enforcement challenge). Plaintiffs allege that they "engage in the religious practices that the [Residents' Bill of Rights] prohibits: housing patients in single-sex rooms, using pronouns consistent with biological sex, and declining to post the required notice," and intend to continue these practices, *see* Compl. ¶¶ 71-72; however, except with respect to the notice, that conduct is prohibited only if it conflicts with a resident's request, *see* § 2803-c-2(2)(a)(iii), (v).[6] Plaintiffs do not allege, *inter alia*, that they have ever received such a request, nor do they specifically allege that they would engage in a proscribed course of conduct in response to one. *See Vitagliano*, 71 F.4th at 136.

Third, Plaintiffs fail to state a claim under the Free Exercise Clause. Contrary to Plaintiffs' allegations, the Residents' Bills of Rights is a neutral and generally applicable statute applying to all long-term care facilities, as that term is defined under Article 28 of the Public Health Law. Article 28 broadly governs the operation of "hospitals," which include nursing homes like Rosary Hill. By contrast, non-medical facilities where services are provided "through prayer alone" are explicitly excluded from Article 28's scope of regulation. *See* § 2801(1). Among regulated long-term care facilities, the Residents' Bill of Rights does not allow facility-based exemptions for religious or any other reason. Thus, the rational basis standard applies to Plaintiffs' Free Exercise claim, *see Emilee Carpenter, LLC v. James*, 107 F.4th 92, 109 (2d Cir. 2024), and such standard is easily satisfied by Defendants' interest in protecting indigent and infirm patients from discrimination in the facility where they live and receive care, *see Washington v. Glucksberg*, 521 U.S. 702, 731 (1997) (recognizing State's "interest in protecting vulnerable groups—including the poor, the elderly, and disabled persons—from abuse [and] neglect"). Plaintiffs' Establishment and Equal Protection Clause claims

---

[3] Defendants have abridged their arguments to comply with the page limitations of Your Honor's Individual Rules and respectfully reserve the right to make additional arguments if permitted to file a dispositive motion.

[4] Unless otherwise indicated, this letter omits internal quotation marks, alterations, and citations when quoting text from court decisions.

[5] The Congregation does not assert associational standing, nor could it. *See Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) ("It is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983 . . . .").

[6] Despite Plaintiffs' allegations to the contrary, the required notice is posted on the Rosary Hill website, along with some limiting language. *See* https://rosaryhillhome.org/admissions (last accessed July 2, 2026).

likewise fail because they are based entirely on the erroneous premise that the Residents' Bill of Rights distinguishes between religions. *See* Compl. ¶¶ 98-105.

Fourth, Plaintiffs fail to state a claim under the First Amendment's ministerial exception or the related religious autonomy doctrine. These are not affirmative causes of action, but rather defenses available in civil suits, and therefore inapplicable here. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 195 n.4 (2012) (explaining that ministerial exception "operates as an affirmative defense to an otherwise cognizable claim" of employment discrimination) (emphasizing narrowness of ruling and noting with approval employer's concession that exception would not "bar government enforcement of general laws restricting eligibility for employment, *because the exception applies only to suits by or on behalf of ministers themselves*") (emphasis added); *see also Belya v. Kapral*, 59 F.4th 570, 584 (2d Cir. 2023) (explaining that "[t]he church autonomy doctrine is a defense," as opposed to a jurisdictional bar).

Fifth, Plaintiffs fail to state a compelled speech claim. Preliminarily, the requirement that Rosary Hill ensure staff working directly with patients receive a cultural competency training does not implicate the First Amendment. Rosary Hill is not required to provide the training itself or to engage in any speech concerning its content, and it remains free to speak against the training's content. *See Grande v. Hartford Bd. of Educ.*, 804 F. Supp. 3d 334, 361 (D. Conn. 2025) (dismissing compelled speech claim where Plaintiff was required to attend professional development training but not to speak there). Similarly, the prohibition on the willful and repeated failure to use a resident's preferred name or pronouns is a regulation of discriminatory conduct that only incidentally affects speech. *See generally R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992) (explaining that "words can in some circumstances violate laws directed not against speech but against conduct," such as "sexually derogatory fighting words . . . , [which] may produce a violation of Title VII's general prohibition against sexual discrimination in employment practices"). Finally, the requirement to post an LGBT/HIV non-discrimination notice alongside any other nondiscrimination policy is akin to workplace disclosure requirements that are routinely upheld. *See CompassCare v. Hochul*, 125 F.4th 49, 64-65 (2d Cir. 2025) (rejecting compelled speech challenge by Christian pregnancy care center to law requiring employers to include in their employee handbooks information about employees' rights and remedies under a law prohibiting discrimination based on reproductive health decision making).

Finally, Plaintiffs fail to state an expressive association claim based on the alleged "indoctrinate[ion]" of its workforce. "It is not enough for an employer to claim that it holds particular views or interests, or even that it expresses such views through its work." *CompassCare*, 125 F.4th at 61. Rather, an employer making an expressive association claim must show that the law "forc[es] it to employ individuals who act or have acted against its *very mission*" and "burdens its associational rights with respect to specific employment decisions." *Id.* at 62 (emphasis in original). Plaintiffs cannot plausibly allege that staff's completion of a biannual cultural competency training is an act against Rosary Hill's stated mission to "assure the dignity and value of their [patients'] final days and keep them comfortable and free of pain." *See* Compl. ¶¶ 1, 14, 37. Moreover, Plaintiffs do not allege any specific employment decisions that are burdened but only speculate implausibly that their staff will become "indoctrinated in ideology" due to the biannual training. *Id.* ¶ 120.

Accordingly, Defendants respectfully request a pre-motion conference to discuss the basis of their proposed motion to dismiss, or in the alternative, request that the Court set a briefing schedule to permit their motion.

Hon. Nelson S. Román                                                                                   Page 4 of 4
July 2, 2026

      Thank you for Your Honor's consideration of this matter.

                                Respectfully submitted,

                                /s/Julia Busetti
                                Julia Busetti
                                Assistant Attorney General
                                (212) 416-8559

Cc:     All Counsel of Record (via ECF)