**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

DOMINICAN SISTERS OF HAWTHORNE, and
SERVANTS OF RELIEF FOR INCURABLE
CANCER d/b/a ROSARY HILL HOME,

        *Plaintiffs*,

        v.

KATHY HOCHUL, in her official capacity as
Governor of the State of New York;

JAMES V. McDONALD, in his official capacity
as Commissioner of the New York State Department of
Health;

KRISTEN M. PERGOLINO, in her official capacity as
Director of the Division of Residential Support Center for
Residential Surveillance Office of Aging and Long-Term
Care of the New York State Department of Health;

KELLY ANN ANDERSON, in her official capacity as
Director of the Division of Adult Care Facility and Assisted
Living Surveillance of the New York State Department of
Health; and

STEPHANIE E. PATON, in her official capacity as Director
of the Division of Nursing home and ICF/IID Surveillance
of the New York State Department of Health,

        *Defendants*.

Case No.:
26-cv-02809-NSR-VR

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION
TO INTERVENE**

## I.    **INTRODUCTION**

The United States respectfully moves, pursuant to Federal Rule of Civil Procedure 24 and

42 U.S.C. § 2000h-2, for leave to intervene in this action to remedy significant violations of the

U.S. Constitution arising from the Defendants Governor Kathy Hochul, Commissioner James V.

McDonald, Kristen Pergolino, Kelly Ann Anderson, and Stephanie E. Paton (collectively "State of

New York" or "New York") enforcement of New York Public Health Law § 2803-c-2—a statute that discriminates of the basis of religion and compels speech.

As shown below, the United States should be granted intervention as of right on two grounds. First, the United States has an unconditional statutory right to intervene. *See* Fed. R. Civ. P. 24(a)(1); 42 U.S.C. § 2000h-2. Second, the United States may intervene as of right because it has significant interests that may, as a practical matter, be impeded by disposition of this case and cannot be adequately represented by the other parties. *See* Fed. R. Civ. P. 24(a)(2). Furthermore, given that this action was filed only recently, the United States' motion is timely. *Id.* In the alternative, the United States satisfies the requirements of Fed. R. Civ. P. 24(b) for permissive intervention and respectfully moves for an order granting its request under that provision. The Proposed Complaint in Intervention ("Complaint") is attached hereto as Exhibit 1.

## II.    BACKGROUND

New York Public Health Law regulates the licensure and activities of, *inter alia*, healthcare facilities. *See generally* N.Y. Pub. Health L. Art. 28. Section 2803-c-2, enacted in 2024, creates a "bill of rights" for "lesbian, gay, bisexual and transgender, and people living with HIV long-term care facility residents[]." *Id.* § 2803-c-2. "Long-term care facilities" are defined to include "a nursing home or a facility providing health-related service." *Id.* § 2801(3) (cross referenced in *Id.* § 2803-c-2(1)(b)).

This "bill of rights" makes it unlawful to "to discriminate against any resident on the basis of such resident's actual or perceived sexual orientation, gender identity or expression." *Id.* § 2803 c-2(2)(a). The statute defines the following acts as discriminatory and therefore unlawful:

- [A]ssigning, reassigning or refusing to assign a room to a transgender resident other than in accordance with the transgender resident's gender identity, unless at the transgender resident's request;

2

- [P]rohibit[ing] a resident from using, or harass a resident who seeks to use or does use, a restroom available to other persons of the same gender identity, regardless of whether the resident has taken or is taking hormones, has had transition-related surgery, or is making a gender transition or appears to be gender-nonconforming;

- [W]illfully and repeatedly fail[ing] to use a resident's preferred name or pronouns after being clearly informed of the preferred name or pronouns, even if the resident is not present;

- [R]estrict[ing] a resident's right to … consensual expression of intimacy or sexual relations, unless the restriction is uniformly applied to all residents in a nondiscriminatory manner.

*Id.* § 2803-c-2(a)(iii, iv, v, and vii).

The plain language of the statute requires long-term care facilities to give effect to the preferences of "trans-identifying" individuals with respect to housing arrangements and use of single-sex private spaces like bathrooms over those of other residents that do not wish to share these private spaces with persons of opposite sex (irrespective of such persons' gender self identification). *See* ECF 1, ¶2. The statute, through the required "cultural competency training," also mandates that individual healthcare providers affirm that they subscribe to controversial and hotly contested questions of human sexuality.

A different part of the statute makes all of its mandates inapplicable "to a facility or institution engaged principally in providing services by or under the supervision of the bona fide members and adherents of a recognized religious organization whose teachings include reliance on spiritual means through prayer alone." N.Y. Pub. Health L. § 2801(1) (emphasis added). Those facilities need not comply with the requirements of § 2803-c-2. In contrast, facilities that rely on medical and spiritual means of healing are covered by § 2803-c-2's mandate.

Yet another exception embedded in the statutory text is worth noting. Subsection (2)(b) allows facilities to disregard the requirements of the "bill of rights" "to the extent that they are

3

incompatible with any professionally reasonable clinical judgment that is based on articulable facts of clinical significance." However, no such exemption is available on account of ethical or religious judgments.

### III.    ARGUMENT

*A.  The United States Has an Unconditional Statutory Right to Intervene*

The United States' Motion to Intervene should be granted under Fed. R. Civ. P. 24(a)(1) because Section 902 of the 1964 Civil Rights Act, codified at 42 U.S.C. § 2000h-2, confers on the United States an unconditional right to intervene in this action. Section 902 provides:

> Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance. In such action the United States shall be entitled to the same relief as if it had instituted the action.

42 U.S.C. § 2000h-2. This action claims that Section 2803-c-2 violates the Equal Protection Clause of the Fourteenth Amendment, ECF 1 ¶¶ 102-106,[1] and the Acting United States Attorney General has certified that this case is of "general public importance." *See* Certificate of the Acting Attorney General, attached as Exhibit 2. Once these statutory prerequisites are met, the "right to intervention by the United States . . . is an absolute and not a permissive one." *Spangler v. United States*, 415 F.2d 1242, 1244 (9th Cir. 1969); *see also Melendres v. Skinner*, 113 F.4th 1126, 1129 n.3 (9th Cir. 2024).

As explained in Section III.B.1 *infra*, the United States' motion is timely.

---

[1] The Complaint also advances other causes of action. *See* ECF 1, ¶¶ 77-101; 107-121.

*B.  The United States May Intervene as of Right under Fed. R. Civ. P. 24(a)(2).*

The United States' motion to intervene should also be granted as of right under Fed. R. Civ. P.  24(a)(2).  "To prevail on a motion for intervention as of right, a movant must '(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'"  *In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)).

While the applicant has the burden to show each element, "any doubts should be resolved in favor of granting intervention, particularly in view of the general rule that intervention . . . is liberally allowed."  *Nedick's Stores, Inc. v. Genis*, 34 F.R.D. 235, 237 (S.D.N.Y. 1963).

### 1.  The United States' Motion Is Timely.

First, there can be no reasonable dispute that the United States' motion is timely.  In determining whether a motion is timely courts usually consider  the following factors: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness."  *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

Each of these factors weighs in favor of granting intervention here.  This action was filed on April 6, 2026, and the United States moved to intervene approximately two-and-a-half months later.  Accordingly, this litigation is at an early stage, with no discovery or dispositive motions, and no response to the initial complaint.  There has been no delay and, consequently, no prejudice to

the other parties.  In contrast, and as explained below, if the motion to intervene is denied, the United States will be prejudiced.

## 2.  The United States Has a Significant Protectable Interest in This Action.

The United States has a significant protectable interest in ensuring that state and local programs do not violate the Fourteenth Amendment.  "The requirement of a significantly protectable interest is generally satisfied when the interest is protectable under some law, and there is a relationship between the legally protected interest and the claims at issue."  *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (quotation and alteration marks omitted).  This interest need not rise to the level required for Article III standing, provided that at least one party has standing and the proposed intervenor does not "pursue[] relief that is broader than or different from the party invoking a court's jurisdiction."  *Little Sisters of the Poor Sts. Peter and Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020).  *See also In re Enf't of Philippine Forfeiture Judgment Against All Assets of Arelma, S.A.*, 153 F.4th 142, 165 (2d Cir. 2025).  Plaintiffs and the United States seek the same relief—declaratory and injunctive relief with respect to N.Y Pub. Health L. § 2803-c-2.  It is beyond dispute that Plaintiffs have standing.  Because the United States does not seek "relief that is broader than or different from the party invoking a court's jurisdiction," 591 U.S. at 674 n.6, it need not independently demonstrate standing.  Regardless, United States has standing to pursue this action.

It is well settled that "the United States suffers a concrete harm to its sovereignty when its laws are violated." *La Unión del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 526 (W.D. Tex. 2022).  *Accord Vt. Agency of Natural Res. v. United States*, 529 U.S. 765, 771 (2000) (United States suffers an "injury to its sovereignty arising from violation of its laws").  Furthermore, as multiple courts have held, "the United States' sovereign interests are harmed when its laws are

6

violated." *United States v. Idaho*, 623 F. Supp. 3d 1096, 1107 (D. Idaho 2022). *See also United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("The United States suffers injury when its valid laws in a domain of federal authority are undermined by impermissible state regulations."); *United States v. Iowa*, 737 F. Supp. 3d 725, 749 (S.D. Iowa 2024), *aff'd as modified sub nom. Iowa Migrant Movement for Just. v. Bird*, 157 F.4th 904 (8th Cir. 2025) (same).

Congress has passed a statute to enforce the rights set forth in the Fourteenth Amendment. 42 U.S.C. § 1983. It has also authorized the Attorney General to intervene in such suits via Section 902 of the 1964 Civil Rights Act. 42 U.S.C. § 2000h-2. Numerous courts have found that the Attorney General's sovereign interest in enforcing the Fourteenth Amendment is strong enough to support Article III standing, which exceeds what Rule 24(a)(2) requires. *See United States v. City of Jackson*, 318 F.2d 1, 14-17 (5th Cir. 1963) ("When a State, . . . by a law or pattern of conduct, takes action motivated by a policy which collides with national policy as embodied in the Constitution, the interest of the United States 'to promote the interest of all' gives it standing to challenge the State in the courts.").

Additionally, the United States may sue, even in the absence of a statutory cause of action, when it can demonstrate injury to its own interests. *See Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967) ("[T]he general rule [is] that the United States may sue to protect its interests."). One of such interests is the effect of a state regulation on interstate commerce. *See, e.g.*, *United States v. City of Jackson*, 318 F.2d 1 (5th Cir. 1963) (citing *In re Debs*, 158 U.S. 564 (1895), *overruled on other grounds by Bloom v. Illinois*, 391 U.S. 194 (1968)). Though Dominican Sisters do not accept payment for the care that they provide to terminal cancer patients, the activities they engage in, in the aggregate, affects interstate commerce. *See Gonzales v. Raich*, 545 U.S. 1 (2005). It is likely (or at least possible) that the Dominican Sisters would cease

operations rather than violate their religious convictions.  Such cessation would cause patients previously housed (or scheduled to be housed) at the Rosary Hill Home to seek care elsewhere—almost certainly in an institution that provides care on commercial basis.  Thus, regulation of Rosary Hill Home affects interstate commerce.  Such regulation affects interests of the United States and therefore gives us standing to sue.  Moreover, placing residents of Rosary Hill Home elsewhere may directly trigger financial interests of the United States because alternative facilities are likely to seek reimbursement from Medicaid or Medicare causing financial injury to the United States.  Seeking protection against such an injury is sufficient to satisfy Article III standing requirements. *See Wyandotte*, 389 U.S. at 201.

The United States therefore has standing to assert each of the causes of action in its proposed Complaint in Intervention.  At a minimum, the United States has a "significant protectable interest" in this litigation.

### 3.   Disposition of This Case May Impede the United States' Interests.

The United States' ability to protect the substantial legal interest described above would, as a practical matter, be impaired absent intervention in this case.  The long-standing Second Circuit rule is that whenever "there is a substantial likelihood that the claims and interests of the proposed intervenors . . . may be adversely affected at least by principles of *stare decisis*, arising out of the final judgment to be entered in [the pending] case . . . they may intervene as a matter of right."  *Oneida Indian Nation of Wisconsin v. New York*, 732 F.2d 261, 265 (2d Cir. 1984).  *See also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (citing Fed. R. Civ. P. 24 advisory committee notes).  The outcome of this case, including the potential for appeals by existing parties, implicates *stare decisis* concerns that warrant the United States' intervention.

4.   The United States' Interests Are Not Adequately Represented.

Finally, the United States' interests in this litigation are not adequately represented by the existing parties to the case.  "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

The existing parties cannot adequately represent the United States' interests because no private party may adequately represent the United States' sovereign interest in ensuring enforcement of fundamental rights under the Constitution.  "[T]he United States has an interest in enforcing federal law that is independent of any claims of private citizens."  *United States v. E. Baton Rouge Sch. Dist.*, 594 F.2d 56, 58 (5th Cir. 1979); *see also EEOC v. Pemco Aeroplex*, 383 F.3d 1280, 1291 (11th Cir. 2004) ("Quite simply, it is so unusual to find privity between a governmental agency and private plaintiffs because governmental agencies have statutory duties, responsibilities, and interests that are far broader than the discrete interests of a private party.").  Thus, "[a]ggrieved individuals . . . lack the required 'identity of interests' with government agencies."  *Acosta v. Idaho Falls Sch. Dist. No. 91*, 291 F. Supp.3d 1162, 1168 (D. Idaho 2017).  And absent "identical" interests, there can be no "adequate representation" under Fed. R. Civ. P. 24(a)(2).  *See Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 195-196 (2022) (rejecting a presumption that the state board of elections adequately represented state legislators' interests merely because they were "related" to the board's interests).  Accordingly, the United States meets this requirement for intervention.

### C. The United States Meets Rule 24(b)'s Permissive Intervention Standard.

Alternatively, this Court should permit the United States to intervene because the United States meets the requirements for permissive intervention under Rule 24(b), which provides as follows:

> **(1) *In General.*** On timely motion, the court may permit anyone to intervene who:
>
>                                     . . .
>
> **(B)** has a claim or defense that shares with the main action a common question of law or fact.
>
>                                     . . .
>
> **(3) *Delay or Prejudice.*** In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).

"The court considers substantially the same factors whether the claim for intervention is 'of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ. P. 24(b)(2)." "*R" Best Produce*, 467 F.3d at 240 (2d Cir. 2006).

As explained in Section III.B.1 *supra*, the United States' motion is timely and will not unduly delay or prejudice the adjudication of the original parties' rights, thus satisfying subsections (1) and (3). United States also satisfies subsection (2) because its claims share "common question[s] of law [and] fact" with Plaintiffs' claims. Here, Plaintiffs assert an Equal Protection claim, as well as several First Amendment claims. The United States also alleges an Equal Protection claim as well as a First Amendment Free Exercise Clause claim. The United States' claims share common questions of law and fact with Plaintiffs' claims. Indeed, the United States' proposed Complaint in Intervention largely tracks the substance of Plaintiffs' Complaint. All other "relevant factors" the court may consider, weigh in favor of the government's intervention in a case involving a legislation discriminating against religious entities and abridging the religious

10

freedom of healthcare providers. *See H.L. Hayden Co. of New York v. Siemens Med. Sys.*, 797 F.2d 85, 89 (2d Cir. 1986).

## IV.    CONCLUSION

For the foregoing reasons, United States' motion to intervene should be granted.

DATED: June 22, 2026                        Respectfully submitted,

                                            HARMEET K. DHILLON
                                            Assistant Attorney General

                                            JESUS A. OSETE
                                            Principal Deputy Assistant Attorney General

                                            R. JONAS GEISSLER
                                            Deputy Assistant Attorney General

                                            *s/ Gregory Dolin*
                                            GREGORY DOLIN (NYRN 4326294)
                                            Senior Counsel

                                            KELSEY E. MCGEE (MO No. 74929)
                                            JANE E. ANDERSEN (NYRN 4651519)
                                            DAVID K. GARDNER (MN No. 0402104)
                                            Trial Attorneys

                                            Civil Rights Division
                                            U.S. Department of Justice
                                            950 Pennsylvania Ave. NW
                                            Washington, DC 20530
                                            Telephone: (202) 598-9251
                                            Email: gregory.dolin@usdoj.gov

                                            ATTORNEYS FOR PLAINTIFF-INTERVENOR
                                            UNITED STATES OF AMERICA