**I&** **First and**
**XIV** **Fourteenth**

**Andrew Nussbaum**
Partner

FIRST & FOURTEENTH PLLC

2 N. Cascade Ave., Ste 1430
Colorado Springs, CO 80903
719.428.2386
*andrew@first-fourteenth.com*

July 13, 2026

The Honorable Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas St., Courtroom 218
White Plains, NY 10601

      Re: *Dominican Sisters of Hawthorne et al. v. Hochul et al.*, No. 26-cv-02809 (NSR)

Dear Judge Román:

      We represent Plaintiffs, the Dominican Sisters of Hawthorne ("the Sisters") and the Servants of Relief for Incurable Cancer d/b/a Rosary Hill Home ("Rosary Hill"). Plaintiffs submit this letter in opposition to Defendants' letter (ECF No. 31) requesting a pre-motion conference regarding their proposed motion to dismiss. Each of Defendants' proposed grounds for dismissal fails, and the motion should be denied.

### The Mandate Is Contrary to the Catholic Values Animating the Sisters' Ministry.

      For 125 years, the Sisters have provided free nursing care through Rosary Hill, a 42-bed skilled nursing facility, where indigent patients with terminal cancer receive comfort and care in their final days. Compl. ¶¶ 1, 14–15. Plaintiffs accept no payment from patients, their families, the government, or insurers. *Id.* ¶ 16. Every element of this ministry—from assigning welcoming single-sex rooms to bathing, dressing, and grooming patients—is an exercise of Plaintiffs' Catholic faith, carried out by staff who each pledge to conduct themselves consistently with Catholic teaching. *Id.* ¶¶ 19–22, 89. Plaintiffs perform this work exceptionally: over the most recent four-year reporting period, the Department of Health received zero complaints against Rosary Hill, while fielding more than 55,000 complaints against other nursing homes. *Id.* ¶¶ 23–24.

      New York's LGBTQ Long-Term Care Facility Residents' Bill of Rights, N.Y. Pub. Health Law § 2803-c-2, together with Defendants' three Dear Administrator Letters and mandatory training materials (the "Mandate"), requires Plaintiffs to abandon these religious practices. The Mandate compels Plaintiffs to assign patients to rooms by gender identity rather than biological sex, permit patients to use bathrooms designated for the opposite sex, use patients' "preferred pronouns," subject patient-facing staff to "cultural competency" training in gender ideology, and post a notice affirming compliance. Compl. ¶¶ 3, 55–66. Noncompliance carries fines of up to $2,000 per violation ($5,000 for repeat violations), injunctions, license revocations, and up to one year in prison. *Id.* ¶¶ 70–75. Yet the Mandate exempts facilities operated by the Church of Christ, Scientist while affording no exemption to Catholic ministries. *Id.* ¶¶ 68–69. Plaintiffs requested a similar exemption, but Defendants refused. *Id.* ¶ 76.

---

*Colorado Springs | Denver | Kansas City | Post Falls, ID | Washington, D.C.*



## The Sisters Are Directly Regulated by the Unconstitutional Mandate.

**Justiciability.** Plaintiffs are the direct objects of the Mandate, so "there is ordinarily little question" they have standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992); *Grand River Enters. Six Nations, Ltd. v. Boughton*, 988 F.3d 114, 120–21 (2d Cir. 2021). Rosary Hill is a covered "long-term care facility," Compl. ¶ 53, and the Sisters satisfy the very test Defendants cite—an "involuntary material burden on its established core activities." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 173–74 (2d Cir. 2021). Rosary Hill has been the Sisters' principal ministry since 1901; twenty Sisters carry out their apostolate there, nine of them as state-licensed staff personally subject to the Mandate and to discipline for noncompliance.

Plaintiffs also have pre-enforcement standing: they intend to continue conduct affected with a constitutional interest that is "arguably proscribed" by the Mandate, and they face a credible threat of enforcement. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159–63 (2014). Defendants sent Plaintiffs three Dear Administrator Letters demanding compliance, Compl. ¶ 51; have publicly and repeatedly affirmed their intent to enforce the Mandate; have never disavowed enforcement against Plaintiffs, *see Upsolve, Inc. v. James*, 155 F.4th 133, 140 (2d Cir. 2025); and are presumed to "enforce the laws [they] enact[]," *Cerame v. Slack*, 123 F.4th 72, 86 (2d Cir. 2024). Defendants' seek to defer adjudication until the Sisters' conduct "conflicts with a resident's request," but the Mandate's training, notice-posting, and recordkeeping requirements bind Plaintiffs now, and staff license renewals complying with the Mandate are imminent.

**Free Exercise, Equal Protection, and Establishment.** Defendants argue the Residents' Bill of Rights is "neutral and generally applicable" because it applies to "all long-term care facilities" and merely "exclude[s]" Christian Science facilities from Article 28's scope. Defs.' Ltr. at 2. But Christian Science facilities such as High Ridge House in the Bronx *are* long-term care facilities within § 2803-c-2, which applies to "residential health care facilities." N.Y. Pub. Health Law § 2803-c-2(1)(b). That definition includes "a nursing home or a facility providing a health-related service," *id.* § 2801(3), and "health-related service" means "service in a facility . . . which provide[s] or offer[s] lodging, board and physical care including, but not limited to . . . dietary supervision and supervised hygienic services," *id.* § 2801(4)(b). High Ridge House provides precisely that—lodging, board, physical care of the sick, dietary supervision, and supervised hygienic services. *See* https://perma.cc/E3LA-ZS89. The *only* reason such facilities escape § 2803-c-2 is that the statute expressly exempts them: "The provisions of this article shall not apply" to facilities of "a recognized religious organization whose teachings include reliance on spiritual means through prayer alone for healing." § 2801(1). A law containing a religious carveout for one faith but not another is neither neutral nor generally applicable. *Catholic Charities Bureau, Inc. v. Wis. Labor & Indus. Rev. Comm'n*, 605 U.S. 238, 248–49 (2025).

Further, as the United States observes in its Motion to Intervene, the Mandate contains a second exemption based on "professionally reasonable clinical judgment," § 2803-c-2(2)(b). This exemption triggers strict scrutiny both because it requires individualized governmental assessment and because it affords no comparable exemption for religious or ethical judgment. *Fulton v. City of Philadelphia*, 593 U.S. 522, 533–34 (2021).

**Church Autonomy.** Defendants contend the ministerial exception and religious autonomy doctrine are "defenses . . . and therefore inapplicable here." Defs.' Ltr. 3. This confuses the source



of Plaintiffs' cause of action with the substance of their rights. 42 U.S.C. § 1983 supplies a cause of action against any state actor who, under color of law, deprives a person of "any rights . . . secured by the Constitution"—including the guarantees of religious autonomy and the church-minister relationship, which are "rights" like any other, enforceable prospectively together with the Declaratory Judgment Act, 28 U.S.C. § 2201. Courts routinely adjudicate affirmative, pre-enforcement claims grounded in church autonomy. *See, e.g.*, *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 59–63 (9th Cir. 2024). And neither *Hosanna-Tabor* nor *Belya*—both of which concerned private civil litigation, not suits against the government—held otherwise. Defendants' position would mean no religious organization could challenge a law invading its internal affairs until after the State hauled it into an enforcement proceeding.

**Compelled Speech.** The Training Requirement compels Plaintiffs to "ensure that every facility staff member who works directly with residents receives" the State's ideological training, § 2803-c-2(7)(a), making Plaintiffs the conduit for a state-scripted message affirming propositions their faith rejects. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573–74 (1995). The Pronouns Requirement regulates pure speech, not conduct, since it applies "even if the resident is not present," § 2803-c-2(2)(a)(v), and it unlawfully compels Plaintiffs to affirm views they find objectionable. *Meriwether v. Hartop*, 992 F.3d 492, 507–08 (6th Cir. 2021) ("Pronouns can and do convey a powerful message" on "a hotly contested matter of public concern."). And the Printed Notice Requirement, unlike the "purely factual and uncontroversial" disclosures in *CompassCare*, compels Plaintiffs to affirm that they "do not permit" practices that the statute defines to include their own religious exercise.

**Expressive Association.** Defendants' argument depends on rewriting Plaintiffs' mission as mere secular comfort care. But courts defer to an association's own account of its expression and what would impair it. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 653 (2000). Plaintiffs' mission is the "healing ministry of Christ," performed in conformity with Catholic teaching by staff who each affirm that teaching as a condition of association. Compl. ¶¶ 19, 29–32, 40. The Mandate conditions Plaintiffs' ability to associate with *any* patient-facing staff on those individuals' indoctrination in a belief system Plaintiffs' faith condemns, and it makes each staff member independently liable for adhering to Catholic practice, §§ 2803-c-2(2)(a), (7)(a).

**The Governor.** A state official may be sued if she "plays some role in the enforcement of the act." *Schulz v. Williams*, 44 F.3d 48, 61 n.13 (2d Cir. 1994). *Romeu* is not to the contrary: the plaintiff there relied solely on Article IV, § 3 of the New York Constitution, arguing that the Governor's general duty to "take care that the laws are faithfully executed" was "by itself" sufficient. 121 F.Supp.2d at 272. By contrast, the Complaint alleges Governor Hochul is responsible for enforcement of the Mandate itself, Compl. ¶ 25—the same allegation made as to each Defendant, which Defendants do not challenge. That allegation must be accepted as true at the pleading stage. The Governor's connection to this statute is confirmed by her role atop the Department of Health, whose Commissioner she appoints and who serves at her pleasure, N.Y. Pub. Health Law § 204, and which issued the Dear Administrator Letters demanding compliance. At minimum, whether and how the Governor participates in enforcement is a factual question inappropriate for resolution on the pleadings. Should the Court conclude greater specificity is required, Plaintiffs request leave to amend or targeted jurisdictional discovery into the Governor's enforcement role.



July 13, 2026
Page 4

We thank the Court for its consideration of this matter.

Respectfully submitted,

*/s/ Andrew Nussbaum*
Andrew Nussbaum
Counsel for Plaintiffs
(719) 428-2386

Cc: All Counsel of Record (via ECF)