First and Fourteenth

**Andrew Nussbaum**
Partner

FIRST & FOURTEENTH PLLC

2 N. Cascade Ave., Ste 1430
Colorado Springs, CO 80903
719.428.2386
*andrew@first-fourteenth.com*

August 31, 2026

The Honorable Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas St., Courtroom 218
White Plains, NY 10601

Re: *Dominican Sisters of Hawthorne et al. v. Hochul et al.*, No. 26-cv-02809 (NSR)

Dear Judge Román:

We represent Plaintiffs. Pursuant to Your Honor's Individual Rules of Practice, Plaintiffs respectfully request a pre-motion conference in anticipation of their motion for summary judgment on all seven counts of the Verified First Amended Complaint ("FAC"), ECF No. 45. Because the FAC is verified and thus carries the weight of sworn testimony, and there is no dispute as to the few facts material to Plaintiffs' claims—the text of the challenged Mandate, Plaintiffs' status as regulated facilities, and the sincerity of their religious beliefs—this case presents purely legal questions that the Court can resolve now, without discovery.

**The Mandate Requires Plaintiffs to Abandon Their Religious Ministries.**

New York's LGBTQ Long-Term Care Facility Residents' Bill of Rights, N.Y. Pub. Health Law § 2803-c-2, together with Defendants' three Dear Administrator Letters and mandatory training materials (the "Mandate"), requires long-term care facilities ("LTCFs") and their staff to assign rooms by gender identity rather than biological sex, permit residents to use restrooms designated for the opposite sex, use residents' "preferred pronouns" even outside the resident's presence, accommodate residents' extra-marital sexual activity, subject every patient-facing staff member to biennial "cultural competency" training in gender ideology, record each resident's self-selected pronouns, and post a notice affirming compliance. FAC ¶¶ 73–86. Noncompliance carries fines of up to $2,000 per violation ($5,000 for repeat violations), injunctions, license revocation, and up to one year in prison. *Id.* ¶¶ 90, 94–96. Yet the Mandate exempts facilities of the Church of Christ, Scientist, § 2801(1), and any facility invoking a "professionally reasonable clinical judgment," § 2803-c-2(2)(b), while affording no exemption for other religious ministries or religious judgment. Plaintiffs requested an exemption in writing on March 5, 2026; Defendants have never responded. FAC ¶ 97.

For 125 years, the Dominican Sisters of Hawthorne have carried out their apostolate through Rosary Hill Home, a 42-bed skilled nursing facility where indigent patients with terminal cancer receive comfort and care in their final days entirely free of charge and to exceptional effect. Over the most recent four-year reporting period, the Department of Health received only one complaint against Rosary Hill while fielding more than 55,000 complaints against other nursing homes. *Id.* ¶¶ 1, 16–18, 25–26. Since the parties' motion-to-dismiss letters were filed, Plaintiffs have amended their complaint to add the Missionary Sisters of St. Benedict and St. Joseph's Home for

the Aged, a 60-bed assisted living residence in Huntington that the Benedictine Sisters have operated since 1973. *Id.* ¶¶ 2, 27–30. The Sisters—including all three of the Home's registered nurses—personally provide most of the care to St. Joseph's residents, greeting each one "at the door as though he were Christ himself." *Id.* ¶¶ 31, 33. For both congregations, every element of this ministry, from assigning welcoming single-sex rooms to bathing, dressing, and grooming those in their care, is an exercise of the Catholic faith, carried out by staff who pledge to conduct themselves consistently with Catholic teaching. *Id.* ¶¶ 21–22, 112, 117. The superiors of both congregations have verified the FAC under penalty of perjury. The Mandate requires Plaintiffs to abandon these religious practices.

**Plaintiffs Are Entitled to Summary Judgment on Each of Their Claims.**

The FAC pleads seven counts under 42 U.S.C. § 1983: violations of the Free Exercise Clause, the religious autonomy doctrine, the ministerial exception, the Establishment Clause, the Equal Protection Clause, the Free Speech Clause, and the right of expressive association. Each turns solely on questions of law.

Whether the Mandate is neutral and generally applicable is a question of statutory construction. On its face, the statute grants a denominational exemption to facilities of "a recognized religious organization whose teachings include reliance on spiritual means through prayer alone for healing"—Christian Science facilities—while denying any exemption to Catholic ministries, § 2801(1), and it separately privileges secular "clinical judgment" over religious judgment through a regime of individualized, case-by-case exemptions, § 2803-c-2(2)(b). Each feature independently triggers strict scrutiny. *Catholic Charities Bureau, Inc. v. Wis. Labor & Indus. Rev. Comm'n*, 605 U.S. 238, 248–49 (2025); *Fulton v. City of Philadelphia*, 593 U.S. 522, 533–34 (2021); *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam); *Larson v. Valente*, 456 U.S. 228, 244 (1982). Whether the Mandate survives strict scrutiny is likewise a legal question, and a State that excuses facilities relying on prayer alone, and any facility asserting clinical judgment, cannot claim a compelling interest in refusing the same accommodation to Plaintiffs, much less show narrow tailoring.

The speech and association claims are equally legal in character. Whether the Printed Notice, Training, and Pronouns Requirements compel speech—and whether that compulsion survives strict scrutiny—are questions answered by the face of the Mandate. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573–74 (1995); *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *Meriwether v. Hartop*, 992 F.3d 492, 507–08 (6th Cir. 2021). So too whether conditioning Plaintiffs' association with their patient-facing staff on those individuals' indoctrination in a belief system Plaintiffs' faith condemns significantly burdens expressive association, a question on which courts defer to the association's own account of its expression. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 653 (2000). And whether the Mandate intrudes upon Plaintiffs' internal religious affairs, their performance of the healing ministry of Christ and their relationship with the ministers who carry it out, is resolved by comparing the Mandate's requirements with doctrines whose contours are legal. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746–47 (2020).

The only facts these questions require are conclusively established by the record already before the Court: the text of the statute, the Dear Administrator Letters, the State's training materials, and the DOH-5804 form (attached to the FAC); Plaintiffs' status as covered LTCFs as confirmed by their state licensure and by Defendants' own letters demanding their compliance; and Plaintiffs' sincerely held religious beliefs and practices, sworn to in the verified FAC.

**Defendants' Prematurity Objection Lacks Merit.**

In conferral, Defendants argued that summary judgment is premature because they have not yet conducted discovery, relying on *Elliott v. Cartagena*, 84 F.4th 481, 492 (2d Cir. 2023). But *Elliott* undermines rather than supports their position. There, the district court granted summary judgment *against* a plaintiff who had been denied any opportunity to take discovery on the case's central, and hotly disputed, factual question: the contents of a lost agreement he was alleged to have signed. The Second Circuit vacated because a court may not enter judgment against a non-movant who has been denied the chance to obtain facts "essential to justify its opposition." Fed. R. Civ. P. 56(d); *Elliott*, 84 F.4th at 492–94. Nothing in *Elliott* holds that summary judgment is premature where no essential fact is, or can be, genuinely disputed. To the contrary, Rule 56(b) permits a motion "at any time," and pre-discovery summary judgment is proper where further discovery could not create a genuine dispute of material fact.

That is this case. The essential facts—that Plaintiffs operate covered LTCFs and that they sincerely hold the Catholic beliefs sworn to in the verified FAC—are not contested and cannot be contested. Defendants' own Dear Administrator Letters demand Plaintiffs' compliance as covered facilities, and the deferential standard governing religious belief forecloses any factual contest over Plaintiffs' faith: it is "not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989); *see Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). Religious beliefs "need not be acceptable, logical, consistent, or comprehensible to others" to merit protection. *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981). Everything else material to the motion is the text of the Mandate itself.

Tellingly, when pressed in conferral, Defendants did not identify a single fact they believe they need to discover. If they intend to oppose summary judgment as premature, Rule 56(d) requires them to submit an affidavit or declaration identifying the *specific* facts unavailable to them, why those facts cannot now be presented, and how discovery would be reasonably expected to create a genuine dispute. Fed. R. Civ. P. 56(d). A "bare assertion" that discovery might turn something up does not suffice, and the failure to file a Rule 56(f) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137–38 (2d Cir. 1994).

Finally, in the interest of efficiency, Plaintiffs respectfully request that the Court align the briefing schedules for Defendants' anticipated motion to dismiss and Plaintiffs' anticipated motion for summary judgment. Because the two motions will present substantially overlapping legal questions, coordinated briefing will conserve the parties' and the Court's resources and permit the Court to consider the issues on a single, consolidated record. Plaintiffs propose that the parties file their opening briefs on a common date set by the Court, that each side file its response brief twenty-eight days thereafter, and that each side file its reply brief twenty-one days after service of the corresponding response.

For these reasons, Plaintiffs respectfully request that the Court schedule a pre-motion conference and grant Plaintiffs leave to move for summary judgment. We thank the Court for its consideration of this matter.

I&XIV First and Fourteenth

We thank the Court for its consideration of this matter.

Respectfully submitted,

*/s/ Andrew Nussbaum*

Andrew Nussbaum
Counsel for Plaintiffs
(719) 428-2386

Cc: All Counsel of Record (via ECF)